UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| PEARLINE WHITE, | ) | C/A No.: 2:15-cv-02761-PMD-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| -vs- | ) | |
| | ) | |
| SOUTH CAROLINA DEPARTMENT OF | ) | |
| HEALTH AND ENVIRONMENTAL CONTROL, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

In this employment action, Plaintiff alleges claims for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *e. seq.*. Previously, the court granted Defendant's Motion for Judgment on the Pleadings as to Plaintiff's claim under the ADEA, Plaintiff's § 1981 cause of action, and any Title VII claims based on events that occurred before October 7, 2012. The only remaining claims before the court are allegations of Title VII race discrimination and retaliation occurring after October 7, 2012. Presently before the court is Defendant's Motion for Summary Judgment. Plaintiff filed a Response to Defendant's Motion for Summary Judgment.[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(g) (D.S.C.). This report and recommendation is entered for review by the district judge.

---

[1] Plaintiff's statement of the facts contains no record cites in support. Local Rule 7.06 (D.S.C.) makes it clear that "[a]ny response supported by discovery material shall specify with particularity the portion of the discovery material relied upon in support of counsel's position, summarize the material in support of counsel's position, and attach relevant portions of the discovery material or deposition." Nevertheless, the court has thoroughly reviewed the record before it.

# I. FACTS

Plaintiff, an African American female, worked for the South Carolina Department of Health and Environmental Control (DHEC) from 1998 until 2013 as an administrative specialist in Children's Rehabilitative Services. (ECF No. 1). Both the Plaintiff and Defendant attach documents related to events prior to October 7, 2012. However, Plaintiff concedes that only facts occurring after October 7, 2012 should be considered.[2]

On March 22, 2013, Plaintiff was evaluated by her supervisor, Kacey Schmitt, for the period of April 2, 2012 to April 2, 2013. (ECF No. 44-5). This evaluation is memorialized in the document titled "Employee Performance and Development Plan." *Id.* The EPDP lists the Plaintiff's job duties, the standard of performance expected, and the Plaintiff's actual performance. Ms. Schmitt noted with specificity numerous errors Plaintiff had committed. A few examples are:

> ... record pulls are not completed within 30 minutes... two documented incidences of HIPAA violations this year.... several instances of incorrect stickers put on charts ... Pearl had difficulty completing MR archiving per policy and procedure both in 2012 and 2013....On at least 3 occasions, supervisors found miscellaneous boxes that Pearl did not account for, send to archive or to storage correctly.... Timely completion was also an issue, especially when related to putting archiving/storage data into spreadsheets. ... Accuracy was also an issue.... When she sent me the transmittal sheets for approval, I found multiple errors, of which I requested her to fix. She re-emailed me the incorrect spreadsheet 6 times. ... Pearl completed two Excel training classes in 2012 prior to archiving of records.

(ECF No. 44-5). Plaintiff's point rating on the March 2013 EPDP was 2.4, with the range for marginal being 1.76-2.75. *Id.*

The next day on March 28, 2013, Plaintiff received a "Warning Notice of Substandard

---

[2] Notwithstanding Plaintiff's concession, consideration of facts prior to October 7, 2012 would not effect the outcome of the claims that are not time-barred here. In other words, assuming the relevance of facts and events occurring prior to October 7, 2012, Defendant is still entitled to summary judgment for the same reasons set forth below.

Performance," noting in detail what job performance duties needed improvement. (ECF No. 44-6). Thereafter, Plaintiff was required to meet weekly with Ms. Schmitt. Those meetings were memorialized and document her continued issues in failing to achieve satisfactory performance up and until her termination on May 29, 2013. (ECF Nos. 44-7, 44-9, 44-10, 44-11, 44-12, 44-13, 44-14, 45-1, 45-2, 45-3, 45-4). Plaintiff did not appeal her termination. (Plaintiff's Dep., ECF No. 45-11 at 48).

On March 31, 2013, Plaintiff emailed Dana Millet, a DHEC employee, stating that she had been harassed by Kacey Schmitt and Karen Warren(Ms. Schmitt's supervisor) for a length of time and that her recent low evaluation was a set up. (ECF No. 47-2). On April 3, 2013, Plaintiff filed a Harassment Complaint Form with the personnel office stating she was falsely accused of not knowing how to do her job and that her recent low evaluation was a conspiracy. As a witness, Plaintiff listed Marian McDaniel. (ECF No. 44-8).

On August 3, 2013, Plaintiff filed a Charge of Discrimination with the South Carolina Human Affairs Commission and the U.S. Equal Employment Opportunity Commission (EEOC) based on race only. (ECF No. 45-5). On August, 4, 2014, Plaintiff filed another EEOC charge with the additions of age and retaliation as the basis of discrimination with the last date of discrimination as May 30, 2013. (ECF No. 45-6; ECF No. 61-1).

With its Motion, DHEC included an affidavit of Dennis Thompson, the Region Administrator. (ECF No. 45-8). Mr. Thompson attested that after Plaintiff's termination, DHEC reduced the number of administrative specialists to two in the Charleston office and Plaintiff's position was transferred to the Orangeburg office. The person hired to fill that position was an African-American female. (ECF No. 45-8). DHEC also attached Ms. Schmitt's deposition. Ms.

Schmitt testified that she was never trained by Plaintiff. (ECF No. 45-12 at 4-5). Ms. Schmitt also testified that one of the other white administrative specialist was written up during the same time period as Plaintiff. (ECF No. 45-12 at 6). Ms. Schmitt stated that the first time she was made aware that Plaintiff felt targeted due to her skin color was in March 2012. (ECF No. 45-12 at 8-10). Ms. Schmitt testified that she did not judge employees by the color of their skin. Ms. Schmitt stated that she has not wavered in her decision to terminate Plaintiff. (ECF No. 45-12 at 11).

Plaintiff attached several documents to her Response, including an EEOC discharge questionnaire, an EEOC employee initial inquiry questionnaire, and what appears to be Plaintiff's unattested/unsworn statements regarding retaliatory acts in May 2013 placed between records of Plaintiff's emails to other DHEC employees in May 2013. (ECF No. 47-16). There are also emails to Plaintiff in early 2013 that generally contain work assignments. (ECF No. 47-16). Additional documents were attached involving events prior to October 7, 2012.

Plaintiff's deposition testimony does not reveal any direct evidence of discrimination. Plaintiff testified that she felt discriminated against by Ms. Schmitt from the first day because Plaintiff "just didn't feel comfortable because of how [Ms. Schmitt] presented herself," despite the fact Plaintiff had never met, talked with, or heard about Ms. Schmitt before Ms. Schmitt became Plaintiff's supervisor. (ECF No. 45-11 at 9). Plaintiff disagreed about the time expectation of pulling records within thirty minutes. She stated that because she pulled records for the whole office she should not have been required to pull records within a specific amount of time. (ECF No. 45-11 at 12). Plaintiff stated that she felt discriminated based on the time limit to accomplish her record duties because she was the only black employee. (ECF No. 45-11 at 31). Plaintiff agreed to the accuracy of the EPDP dated 2013 as to the spreadsheet issue. Plaintiff stated there were errors

because she was learning and had to go to training. (ECF No. 45-11 at 16). Plaintiff stated the low evaluation was discriminatory and unfair. (ECF No. 45-11 at 17). Plaintiff testified that she felt discriminated against by her duties having to be at the front desk. (ECF No. 45-11 at 29).

## II. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir.1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252.

To show that a genuine dispute of material fact exists, a party may not rest upon the mere

allegations or denials of his pleadings. *See Celotex*, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also Cray Commc'n, Inc. v. Novatel Comput. Sys., Inc.*, 33 F.3d 390, 393-94 (4th Cir. 1994); *Orsi v. Kickwood*, 999 F.2d 86, 91-92 (4th Cir.1993); D.S.C. Local Rules 7.04, 7.05.

### III. DISCUSSION

#### A. Title VII

##### 1. Discrimination

Title VII makes it "an unlawful employment practice for an employer (1) to ... discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff, asserting a claim of unlawful employment discrimination based on race under Title VII, may establish her claim 1) by direct evidence of discrimination or 2) by circumstantial evidence using the burden-shifting proof scheme in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Because Plaintiff's Response (ECF No. 47 at 8) states "the Plaintiff does not have direct evidence," the only resulting question for this court is "whether the [P]laintiff[] ha[s] proffered circumstantial evidence of discrimination sufficient to satisfy the familiar *McDonnell Douglas* framework for proof." *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001).

Under *McDonnell Douglas*, Plaintiff has the initial burden of establishing a prima facie case

of discrimination. *McDonnell Douglas*, 411 U.S. at 802. The elements of a prima facie case differ based on the nature of the claim. *Rowe v. Marley Co.*, 233 F.3d 825, 829 (4th Cir. 2000). If Plaintiff establishes a prima facie case, the burden then shifts to the Defendant to produce a legitimate nondiscriminatory reason for the disparate treatment. *Tex. Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). This is a burden of production, not of persuasion on the defendant. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). Once the Defendant has met its burden of production by producing a legitimate nondiscriminatory reason, the sole remaining issue is "discrimination vel non." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000)(internal citation omitted). In other words, the burden shifts back to the Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by the Defendant is not its true reason, but was pretext for discrimination. *Id.* Throughout the burden shifting scheme, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude Defendant intentionally discriminated against her.

To establish a prima facie case of race discrimination, the Plaintiff must present facts showing that 1) she is a member of a protected class; 2) she suffered adverse employment action; 3) she was performing her job duties at a level that met her employer's legitimate expectation at the time of the adverse employment action; and 4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). Defendant conceded in its Motion that Plaintiff is a member of a protected class and Plaintiff suffered from an adverse employment action when terminated. (ECF No. 42-1 at 12). Because Plaintiff failed to create issues of fact that her job performance was meeting DHEC's

7

legitimate expectations at the time of termination and that the position was filled by someone outside her protected class or remained open, Plaintiff is unable to demonstrate a prima facie case.

### a. Performance of duties at level meeting Defendant's legitimate expectations at time of termination

Plaintiff's Response on this element is one paragraph and contains one sentence each in regard to each Exhibit A, B, C, and G, and one sentence relating to Exhibits D, E, and F, and one sentence relating to Exhibits H, I, J, and K. Plaintiff cites no legal authority supporting her position or the significance/relevance of these records. Plaintiff concludes that she has exceeded this element to establish a prima facie case of discriminatory discharge. (ECF No. 47).

The Plaintiff in *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 516 (4th Cir. 2006) urged the court to review his performance prior to the onset of events that his employer cited as the reason for terminating him. The Fourth Circuit rejected this notion stating: "The further back in time a court goes to evaluate an employee's performance, the more removed the evidence is from the time of termination." *Id.* As the length of time between the last satisfactory performance and the termination increases, the rationality of the rebuttable presumption framework and fairness decreases. *Id.* at 516-17.

In *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 547 (4th Cir. 1995), *rev'd on other grounds*, 517 U.S. 308 (1996), plaintiff was terminated in August 1990 and the court held that plaintiff's 1989 performance was irrelevant to determine satisfactory performance at termination.

The question here is whether Plaintiff has produced sufficient evidence from which a jury could conclude that she met DHEC's legitimate job expectations. *See Warch*, 435 F.3d at 517. The Fourth Circuit has noted that the opinions of others and opinions of Plaintiff lack probative value

as to whether Plaintiff was meeting her employer's expectations. *See id.* at 518. Also, "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the Plaintiff." *Hawkins v. PespiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000)(internal citations and quotations omitted). On a motion for summary judgment, generally Plaintiff's "own testimony ... cannot establish a genuine issue as to whether [the Plaintiff] was meeting [the employer's] expectations." *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003).

Plaintiff was terminated on May 29, 2013. As discussed above, the more extenuated in time the evidence is from the termination date the less useful/probative the evidence becomes. Additionally, the evidence should indicate the employer's perspective of the performance, not the Plaintiff's. The documents designated as Exhibits A, D-K to Plaintiff's Response(ECF No. 47-1, 47-4 – 47-11) show that DHEC was not satisfied with Plaintiff's job performance. On March 28, 2013, Plaintiff was issued a "Warning Notice of Substandard Performance." (ECF No. 47-1). The document contained two duties in which Plaintiff failed to meet the requirements of her job. (ECF No. 47-1). The notice contained specific expectations, Plaintiff's actual performance, and what Plaintiff could do to meet the expectations for each duty in the future. (ECF No. 47-1). As to Duty#1, the Notice stated Plaintiff's performance:

> Retrieval of records for staff was not completed within a timely manner. There have been concerns with you being negligent in following rules, regulations or policies relating to HIPAA. You have failed to consistently generate monthly/yearly reports. Several charts were incorrectly labeled as CRS instead of PPNBHV. In addition, two pharmacy bills were processed incorrectly this review period.

(ECF No. 47-1). As to Duty#2, Plaintiff's performance was noted as follows:

> You have experience[d] difficulty completing MR archiving per policy and procedure. You have been untimely with completing spreadsheets for archiving/storage data. You have submitted several inaccurate archiving transmittal

9

  sheets. You have failed to interpret and carry out tasks in accordance with written policies and processes.

(ECF No. 47-1).

  The remaining exhibits are near weekly memorandums from management to Plaintiff regarding her performance under the March 28, 2013 Warning Notice. Plaintiff argues that the memorandums of the written supervisory counseling and the extension of the improvement plan show that Plaintiff was meeting DHEC's expectations. It does appear that Plaintiff began to meet improvements under Duty#1. However, a review of the documents shows otherwise as to Duty#2.

  The April 9, 2013 Memorandum notes in length with specific detail how Plaintiff was not meeting DHEC's expectations under Duty#2 and concluding "It is expected that you fix these errors immediately and that no more errors like this will occur. This written counseling serves as notice of my counseling session completed with you and that should these problems continue to occur, you will be subject to further disciplinary action under the Progressive Discipline Policy." (ECF No. 47-1). Plaintiff was on notice that she was not meeting her employer's expectations as to her job performance.

  Memorandums dated April 17, 2013, and April 24, 2013, noted that errors discussed in the previous week's meeting were not corrected and explicitly noted that while improvement was seen in Duty#1 that Plaintiff was not showing the same improvement in Duty#2. (ECF No. 47-5, 47-6).

  Plaintiff's time period to make improvements in her job performance was extended. Plaintiff relies on the extension of the Warning Notice as proof of Plaintiff's improvement. The Notice explicitly states: "This extension is being issued since you have shown some improvement. However, we remind you that the expectation is that you fully meet the requirements that are set out

in the WNSP. ... You will be evaluated before the end of the WNSP and you must be at an 'Effective' level at that time or you will have to be removed from the position in accordance with policy." (ECF No. 47-7).

Weekly supervisory counseling sessions continued and memorandums dated May 1, 2013, May 8, 2013, and May 15, 2013 chronicled in detail Plaintiff's poor performance and her employer's concerns. (ECF No. 47-8, 47-9, 47-10). On the week before Plaintiff's termination, the memorandum to Plaintiff again noted numerous errors with specificity:

> For Duty #2, You have been unable to complete the archiving process with limited guidance. You did not complete archiving and inputting storage data into the spreadsheets within 25 days, and you did not email me accurate transmittal sheets within 5 working days. When we met on 5-8-13, we discussed errors on the spreadsheets and the transmittal sheets that needed to be corrected immediately. It was expected that since you were trained again on archiving on 5/13/13, that you would accurately complete the archiving process, including transmittal sheets, by 5/21/13. When checking the spreadsheets on 5/22/13, I found new errors and it appears that there are still missing spreadsheets. I have also found errors with records previously identified as eligible for archive, that have not been archived correctly according to the policy. As of 5/22/13, I have received 3 emails with attached transmittal sheets. The first email contained transmittal sheets for 2005, 2006, 2007, 2008, and 2009 minor records and 2009 adult records. You later sent me an email with transmittal sheets for what appeared to be corrected 2009 minors transmittal sheets. On 5/21/13, you emailed me with what you stated were corrected transmittal sheets for 2005, 2006, 2007 and 2009 minor records and 2009 adult records. When checking the transmittal sheets, I also found inaccuracies. Therefore, you have been [unable] to accurately complete archiving and inputting storage data into the spreadsheets within the designated deadlines. You have also been unable to email me accurate transmittal sheets within the designated deadlines. Do not send any of these transmittal sheets to SRC since there are still errors.
>
> In regards to the email that Karen sent on 5/20/13, stating that she had found three boxes of records on the shelf with transmittal labels, you said that they only needed reboxing, but also stated that you had not checked to see if the charts in these boxes were correct. You told me today that you have checked these boxes for accuracy and that they should have gone to archive in 2011. You stated that they have already been archived in CARES and had been approved in 2011 to go to archive (they have transmittal stickers), but for some reason did not make it on the truck to go to

>archive.
>
>It is expected that you will complete the batch filing task by the end of day on 5/24/13 as discussed during our last meeting on 5/15/13. You stated that you and Karen Warren reviewed the batch file process on 5/20/13 and feel comfortable with completing this process accurately and independently by the 5/24/13.
>
>When discussing the errors in duty #2, you stated that the 2008 transmittal sheet emailed to me was inaccurate and should not be included with the other transmittal sheets as there are no 2008 records to be archived. You stated that both of the records previously listed had mismatching closure years (CARES said 2008, but the record has a different closure year sticker/documentation). You stated that this was the case as well with the two 2007 adult records that you removed from the 2007 minor spreadsheet. You were uncertain why one of those records could now not be found on any of the spreadsheets and why the other one had been list[ed] in two different boxes on the same spreadsheet. You stated that because of these corrections, there should not be any missing spreadsheets or transmittal sheets. I asked that you email me [] if you make any further corrections. You stated that you felt that you had found all the mistakes discussed previously and that all the pulled records had been archived and boxed accurately.
>
>This written counseling serves as notice of my counseling session completed with you and that should these problems continue to occur, you will be subject to further disciplinary action under the Progressive Discipline Policy.

(ECF No. 47-11).

Plaintiff's employer consistently informed her in detail how she was not meeting expectations and warned her of the consequences if her performance did not improve. She was given from March 28, 2013, until her termination on May 29, 2013 to improve, and the evidence shows that DHEC was not satisfied with her performance near in time to her termination. Plaintiff attempts to ignore the evidence specifying her poor performance; Plaintiff focuses only on her improvements on Duty#1 and not the bulk of documentation from her employer noting the failures under Duty#2.

The evidence discussed above directly addresses the third element of Plaintiff's prima facie case, a burden she bears under the *McDonnell Douglas* framework. Evidence of Plaintiff's failure

to meet her employer's expectations as to her job performance at the time of her termination is substantial and persuasive such that no reasonable jury could find by a preponderance of the evidence that she was performing her job to her employer's satisfaction. Plaintiff's own testimony is not sufficient to create an issue of fact as to whether Plaintiff was performing at a level that met DHEC's reasonable expectations.

Thus, Plaintiff has failed to satisfy the third element of her prima facie case of discrimination. Once Plaintiff has failed to make a showing on one element, the court is not required continue in the analysis, even so, Plaintiff cannot meet the fourth element of her prima facie case. Plaintiff must show that her position remained open or was filled by a person outside her protected class. *Holland*, 487 F.3d at 214. Plaintiff alleges it is unknown how long her position stayed open and the hiring of an African American female was strategic planning. Mr. Thompson attested that the position was transferred from the Charleston office to the Orangeburg office and then filled by Shirley Millhouse, an African-American female. (ECF No. 45-8). Plaintiff does not support her allegations with evidence, and Plaintiff does not meet the fourth element of her prima facie case.

Even assuming *arguendo* that Plaintiff set forth a prima facie case, which she has not, the employer has presented legitimate nondiscriminatory reasons why Plaintiff was dismissed— namely that she failed to correct the above-discussed deficiencies— to meet its burden of production under the burden shifting scheme. *See Burdine*, 450 U.S. at 254. The burden then shifts back to the Plaintiff to demonstrate by a preponderance of the evidence that the reason produced is not true but was pretext for discrimination. *See Reeves*, 530 U.S. at 143. Plaintiff has not demonstrated such and fails to meet her burden under the *McDonnell Douglas* framework.

**2. Retaliation**

Plaintiff filed an EEOC charge on August 3, 2013, alleging only race discrimination in both the "check boxes" and the narrative. (ECF No. 45-5). Plaintiff alleged that her supervisor Kacey Schmitt intimidated and harassed her and she was treated less favorably than white employees. (ECF No. 45-5). Plaintiff filed an amended EEOC charge on August 4, 2014, alleging race, retaliation, and age, contending that she was terminated because she informed upper management about problems in her department. (ECF Nos. 45-6; 61-1).

"Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *see also* 42 U.S.C. § 2000e-5(e)(1). The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. *King v. Seaboard Coast Line R.R. Co.*, 538 F.2d 581, 583 (4th Cir. 1976). Only those claims stated in the initial administrative charge, "those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge and were therefore time barred).

"Title VII establishes two possible limitation periods for filing a discrimination charge with the EEOC." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009); 42 U.S.C. § 2000e–5(e)(1). "The basic limitations period is 180 days after the alleged unlawful employment practice. However, the limitations period is extended to 300 days when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency."

*Id.* (internal quotation marks omitted).  In South Carolina, the 300–day limitations period applies. The failure to file a timely charge with the EEOC bars the claim in federal court.  *See McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 131 (4th Cir. 1994).  Plaintiff's last date of discrimination as listed on both Charges of Discrimination was May 30, 2013.  Plaintiff cannot demonstrate that she filed a timely EEOC charge that covered all the claims alleged in her subsequent federal court action.  Plaintiff's last date of discrimination was May 30, 2013; Plaintiff's retaliation Charge was filed August 4, 2014, with the South Carolina Human Affairs Commission, well beyond the 300 day limit.

Plaintiff's statement that the second EEOC charge corrected clerical errors and did not add any additional information is erroneous.  The EEOC charge controls the scope and jurisdiction of the subsequent federal court litigation.  The addition of discrimination based on age and retaliation are new charges with factual allegations that were not contained in the August 2013 original charge based only on race.[3]

The Plaintiff's Response makes an additional argument that the (undated) discharge questionnaire is part of the charge form, was submitted within the requirements of the EEOC, and "fully lays out the grounds on which she was retaliated against." (ECF No. 47-11).  Plaintiff cited no legal authority to support this position.  The questionnaire contains the statement "**COMPLETION AND SUBMISSION OF THIS QUESTIONNAIRE DOES NOT IMPLY OR CONSTITUTE THE FILING OF A CHARGE**." (ECF No. 47-16)(emphasis in original).  The four-page questionnaire does not contain any factual allegations as to retaliation. (ECF No. 47-16).

---

[3] *See Young v. Housing Authority of Baltimore*, 2015 WL 795132, * 3 (N.D. Md. Feb. 24, 2015)(looking also at the narrative to determine if it "specifically allege[s] or describe[s] retaliation" or that the retaliation grew out of the filing and pendency of the first EEOC charge).

15

"In determining what claims a plaintiff properly alleged before the EEOC, we may look only to the charge filed with that agency." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013). Considering an intake questionnaire as part of the formal discrimination charge contravenes the purposes of Title VII. *Id.* Claims based on allegations included only in questionnaires and letters submitted to the EEOC are outside the jurisdiction of the federal courts. *Id.* Thus, Plaintiff's argument that the discharge questionnaire contained the charge of discrimination based on retaliation and that the questionnaire was part of the charge is without merit.

Federal courts do not have subject matter jurisdiction over claims that are not timely raised in a EEOC charge. *Dolgaleva v. Va. Beach City Pub. Sch.*, 364 Fed. Appx. 820, 824 (4th Cir. 2010)(unpublished). Based upon the foregoing, the Plaintiff failed to exhaust her administrative remedies as to claims of retaliation in her complaint, and thus those claims should be dismissed.

## IV. CONCLUSION

For the above reasons, Plaintiff fails to create genuine issues of material fact to withstand summary judgment on her claims of retaliation and discriminatory termination. Summary judgment is proper here where Plaintiff cannot establish a prima facie case for her discriminatory termination claim and cannot demonstrate that she timely filed an EEOC charge for retaliation. *See McDonnell Douglas*, 411 U.S. at 802; *see Evans*, 80 F.3d at 963; *see Celotex*, 477 U.S. at 323. Accordingly, it is recommended that Defendant's Motion for Summary Judgment be granted.

## V. RECOMMENDATION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 42) be granted and this case be dismissed in its entirety.

s/ Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 23, 2017
Florence, South Carolina